IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CHARLES DANIEL SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>Defendant. | CV 18-69-BLG-SPW<br><br>ORDER |

Before the Court is United States Magistrate Judge Timothy Cavan's Findings and Recommendations, filed on June 19, 2020. (Doc. 48). Judge Cavan recommends that this Court grant in part and deny in part Charter's Motion for Summary Judgment (Doc. 39). Charter timely objected to Judge Cavan's Findings and Recommendations. (Doc. 49). Smith filed a response to Charter's objection. (Doc. 50). The parties are entitled to *de novo* review of those findings or recommendations to which they object. 28 U.S.C. § 636(b)(1).

Smith sued Charter under Montana's Wrongful Discharge from Employment Act (WDEA), Montana Code Annotated § 39-2-501, *et* seq. Smith alleges that

1

Charter wrongfully terminated his employment in January 2018. For the reasons discussed below, this Court adopts Judge Cavan's Findings and Recommendations in part and rejects them in part, and grants Charter's Motion for Summary Judgment in its entirety.

## I.   Facts

The parties do not object to Judge Cavan's factual findings. As a result, the Court adopts the facts as set out by Judge Cavan and reiterates only those necessary to its analysis below.

## II.   Legal Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing*

*Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020–21 (9th Cir. 2007).

## III. Discussion

In his Findings and Recommendations, Judge Cavan determined that Charter was entitled to summary judgment on Smith's claim that Charter failed to follow its written personnel policies. He further determined that questions of fact preclude summary judgment on whether Charter had good cause to terminate Smith. Charter objects, asserting that Judge Cavan erred in excluding evidence relating to the termination as irrelevant and that the fact issues surrounding good cause are immaterial. (Doc. 49.)

### A. Wrongful Discharge Standard

A party is entitled to summary judgment if it can demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making that determination, the Court views the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S.

3

144, 157 (1970)). Although in wrongful discharge cases under the WDEA the plaintiff bears the burden of proving his or her claim, the initial burden on a motion for summary judgment is on the employer-defendant, who must first establish that there are no issues of material fact as to good cause. *Schwatz v. Metro Aviation, Inc.*, 2009 U.S. Dist. LEXIS 9448, *11 (D. Mont. 2009) (citing *Arnold v. Yellowstone Mountain Club, LLC*, 100 P.3d 137, 141 (Mont. 2004)).

Good cause means reasonable job-related grounds for dismissal. Mont. Code Ann. § 39-2-903 (5) (2019). This includes failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason. *Id.* The reason for termination cannot be "false, whimsical, arbitrary or capricious" or have "no logical connection" to the needs of the business. *McConkey v. Flathead Elec. Coop.*, 125 P.3d 1121, 1127 (Mont. 2005).

In wrongful discharge cases, reasons for discharge other than those set forth in the discharge communication are irrelevant and inadmissible. *McConkey*, 125 P.3d at 1127. Evidence offered to substantiate the reasons given in the communication is admissible, however. *Id.* (citing *Jarvenpaa v. Glacier Elec. Coop.*, 970 P.2d 84, 90-91 (Mont. 1998)). This encompasses evidence relied upon and considered by the employer at the time of termination. *King v. Rec. Equip. Inc.*, 2016 U.S. Dist. LEXIS 170131, *4 (D. Mont. 2016). Put more straightforwardly, this distinction divides events that occur prior to the termination

4

(which may be relied on) from post-hoc rationalizations (which are irrelevant and therefore inadmissible). Essentially, the relevant question is whether the termination was wrongful at the time and allows evidence proving or disproving that proposition, while excluding as irrelevant evidence logically or temporally unrelated to that decision.

Charter incorrectly asserts that this standard only applies to termination decisions under Montana's Service Letter Statute (Mont. Code Ann. § 39-2-801, *et seq.*). (Doc 49 at 2). While this may have originally been the case—such as in *Swanson v. St. John's Lutheran Hosp.*, 597 P.2d 702, 706-07 (Mont. 1979) (requiring that when a discharge letter is requested under Montana's anti-blacklisting statutes, going forward, only the reasons stated in the letter may be relied on as evidence)—the Montana Supreme Court has consistently imported that language and applied it to straight-WDEA claims. *See Galbreath v. Golden Sunlight Mines, Inc.*, 890 P.2d 382, 385 (Mont. 1995). Judge Cavan correctly interpreted this caselaw and Charter's objection is unfounded. The requirement that only evidence stated and relied upon in the discharge communication may be relevant to determining whether a discharge is wrongful applies to all claims under the WDEA, including the present claim.

To avoid summary judgement on the issue of good cause, then, the plaintiff may either produce evidence that could prove the given reason for the discharge is

5

not good cause or that the given reason is pretextual. *Pritchard-Sleath v. Opper*, 2014 U.S. Dist. LEXIS 192338, *36-37 (D. Mont. 2014); *see also Buck v. Billings Mont. Chevrolet*, 811 P.2d 537, 541 (Mont. 1991). This evidence must go beyond mere denial or speculation and show facts sufficient to allow a fact-finder to decide that the termination was not for good cause. *Id.* at *37 (citing *Delaware v. K-Decorators, Inc.*, 973 P.2d 818, 829 (Mont. 1999). Even where a plaintiff disputes the truth of many of the factual assertions made by the employer, summary judgment is appropriate where there are undisputed facts that supply good cause for discharge. *Davis v. Montana*, 357 P.3d 320, 323 (Mont. 2015).

### B. Charter Supplied Good Cause for Smith's Termination

Charter employed Smith in several capacities after Smith joined the company in a merger. Most recently, Smith worked as Charter's ISP VP, a managerial position based in Billings, Montana. Smith's role in this position was to oversee numerous Charter locations throughout Montana. Smith received satisfactory, but not effusive, performance evaluations from supervisors and peers in this role. (Doc. 41 at 7-10.) In Smith's 2016 performance review, one of his top areas to develop was to travel more frequently and to build relationships in the field. (Doc 41-10 at 7.)

On January 29, 2018, Charter ended Smith's employment with the company. (Doc. 41-25 at 1-2.) Smith's supervisor, Gary Heimstead, met with Smith and had Smith sign a corrective action report detailing two incidents contributing to the termination decisions; only the second, Smith's failure to travel, is at issue upon objection. *Id.* The report stated that Smith only conducted one site visit in November 2017 and one site visit in December 2017 (and noted that the December visit was within Billings). *Id.* Consequentially, Smith was to be terminated, as the report states. *Id.*

Charter argues that it had good cause to terminate Smith's employment because he repeatedly fell short of his travel requirements in his role as VP. (Doc. 49 at 14-15.) Smith argues Charter cannot demonstrate good cause because there is a fact issue as to the precise nature of the travel requirement. (Doc. 50 at 5.) Crucially to Smith's position, the corrective action report lists the travel requirement as 50% while Smith contends that the 50% requirement was not instituted until 2018 and that a quarterly travel requirement applied at the time. Smith additionally argues that the travel requirement was excused or unreasonable. (*Id.* and Doc. 41-25 at 1.) While the parties dispute the extent of the travel requirement, both agree that Smith's position required at least quarterly site visits. Furthermore, the parties also agree that Smith only traveled within Billings in December for his official site visits. (Doc. 41-25 at 1.) Charter, in support, also

7

references expense reports detailing Smith's failure to travel at all during Q1 2017 and only one four-day trip in Q2 2017. (Doc. 46.) (Smith missed all of Q3 2017 and approximately seven weeks of Q4 2017 due to a non-work-related medical issue.)

A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the non-moving party. *Russell v. Daiichi-Sankyo, Inc.*, 2012 WL 1793226, *7 (D. Mont. 2012). Here, there can be no genuine dispute about the existence of a travel requirement and, likewise, no dispute about Smith's failure to travel during the months preceding his termination because Smith has produced no evidence that would supply a reasonable fact-finder with grounds to find that he satisfied any portion of Charter's travel policies. Smith was repeatedly warned that his travel needed to increase and that his failure to travel was causing morale issues. (Doc. 41-10; 40 at 12; 41-35; and 41-33.) Charter supervisors raised this issue with Smith, but Smith still failed to meet his employer's expectations for his position. (Doc. 41-10; 41-33 at 4; and 41-25.)

Smith alleges that it would be unreasonable to travel in the winter in Montana and therefore the travel requirement was unreasonable. (Doc. 43 at 17-18.). Montana Code Annotated § 39-2-903 (5) (2019) states that good cause means "reasonable job-related grounds." For example, an employee on a farm refusing to clean a chicken coop and feeders constitutes reasonable job-related grounds for

8

dismissal because those tasks are reasonable given the nature of a farming operation. *Pankratz Farms, Inc. v. Pankratz*, 95 P.3d 671, 685 (Mont. 2004). Here, travel (or failure to travel) is reasonably related to Smith's job, so asking Smith to travel frequently as part of his job is not unreasonable. Additionally, it can hardly be said that it is unreasonable for an employer to expect an employee to travel during the winter months in Montana. Depending on the winter, conditions may be mild with relatively little snow or miserable with a lot of snow. Because travel is reasonably related to Smith's position and because winter conditions differ greatly from week to week and year to year, it is not unreasonable for Charter to require some amount of winter travel. Smith therefore fails to meet his burden in showing that Charter's stated grounds are not good cause under the WDEA.

Judge Cavan correctly determined that Charter's other arguments related to Smith's prior work history need not be considered except to the extent they substantiate the reasons Charter supplied in the discharge communication. For example, evidence of Smith's Facebook post in October 2017 would not be admissible at trial because it does not substantiate the reasons for Smith's termination, as supplied in the discharge communication, but evidence of low employee morale in Smith's district due to his failure to travel to various sites would be admissible to substantiate the reasons for Smith's termination and also to demonstrate the reasonable job-related grounds for Smith's dismissal. So, in this

Court's view, Judge Cavan applied the correct standard, but he applied it too narrowly when he excluded evidence Charter offered to substantiate their reasons stated in the discharge communication. Additional evidence offered to substantiate reasons provided in the termination communication is admissible. *Jarvenpaa*, 970 P.2d at 90-91.

Charter told Smith in the discharge communication that Smith failed to fulfill the 50% travel requirement and completed only 5% travel. (Doc. 41-25 at 1.) Charter links the morale issues they seek to introduce to travel and therefore such evidence is admissible. Charter, using contemporaneous sources squarely connects Smith's lack of travel to the declining morale of supervisees in remote offices. Because this evidence substantiates their assertion that Smith failed to meet the requirements of his position, it is relevant and Judge Cavan should have considered it. The bottom line is that Smith was required to travel, and the parties agree that Smith knew the position required at least some travel. The factual dispute between the parties of whether Smith was required to travel 50% of the time or only quarterly is immaterial given the undisputed evidence that during the relevant period, Smith did not travel outside of Billings for site visits. *Anderson*, 477 U.S. at 248. Charter provided evidence that Smith failed to meet even a quarterly travel requirement. Smith fails to combat that evidence with more than uncorroborated denials. (Doc. 44 at 45, ¶ 75). Charter directly linked the travel

requirement to morale issues in Smith's 2016 performance review and the April 2017 Warning and then relies on that connection as part of their termination decision. To exclude that evidence as immaterial or unrelated to the stated reasons for Smith's termination is illogical given that explicit connection. Charter, therefore, has supplied good cause as defined in the WDEA for Smith's termination.

### C. Smith Provides No Evidence of Pretext

To defeat summary judgment on the issue of pretext, "the employee must prove that the given reason for the discharge . . . is a pretext, and not the honest reason for the discharge." *Arnold v. Yellowstone Mountain Club, LLC*, 100 P.3d 137, 142 (Mont. 2004). A plaintiff may prove pretext using either direct or circumstantial evidence. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). "Direct evidence is evidence which, if believed, proves the fact of the discriminatory animus without inference or presumption." *Id.* "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Id.* In contrast, when direct evidence is unavailable, and the plaintiff proffers only circumstantial evidence that the employer's motives were different from its stated motives, "specific" and "substantial" evidence of pretext is required to survive summary judgment. *Id.* at 1222.

Smith only perfunctorily and obliquely references any dishonest motive for his termination. In his initial response to the summary judgment motion, he includes a paragraph with only a bare assertion of pretext. (Doc. 43 at 28.) This is insufficient to survive summary judgment. In Smith's response to Charter's objection to the Findings and Recommendations, Smith raises the spectre of a pretextual motive, asserting that Charter actually wanted to fire him because of a Facebook post; that statement is likewise unsupported and therefore unable to support a finding in Smith's favor. (*Id.* and Doc. 50 at 12.) To create an issue of material fact on the issue of pretext, Smith needed to produce factual support beyond mere assertion or speculation, and he failed to do so. A private company terminating a managerial employee for inappropriate public comments does not abridge the First Amendment, as Smith seems to suggest, and therefore cannot supply the basis for a discriminatory motive. The plain language of the First Amendment states that the government shall not abridge the freedom of speech ("Congress shall make no law . . . abridging the freedom of speech"). U.S. Const. Am. I. This has been interpreted to mean that state actions cannot impinge the right to speech. *Hall v. American Nat'l Red Cross*, 86 F.3d 919, 921 (9th Cir. 1996). Corporate actors therefore can only violate the first amendment when they are acting under the government's imprimatur. *Id.* Here, Smith raises no allegations that Charter is either a subsidiary or entity of the government or that

12

under a functional analysis that Charter and the government share any nexus. Therefore, the First Amendment cannot form the basis for his retaliation claim and because he has raised no other retaliation arguments, that portion of his claim fails.

### IV. Conclusion

Charter submitted evidence sufficient to meet its initial burden of showing good cause for Smith's termination. Smith failed to respond with material and substantial evidence to raise genuine issues of material fact as to whether Charter had legitimate business reasons for discharging him, or that the discharge was false or pretextual. Accordingly, because Charter presents undisputed facts supplying good cause for termination, even though facts related to other claims are in dispute, summary judgment is appropriate on the whole matter. Magistrate Cavan's Findings and Recommendations (Doc. 48) are therefore ADOPTED IN PART and REJECTED IN PART and Charter's Motion for Summary Judgement (Doc. 39) is GRANTED in its entirety. Judgment shall be entered in favor of the Defendant.

DATED this 25th day of January 2021.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge