IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CHARLES DANIEL SMITH,<br><br>                  Plaintiff,<br><br>vs.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>                  Defendant. | CV 18-69-BLG-SPW<br><br>ORDER ON MOTION IN LIMINE |

Before the Court is Defendant's Charter Communications, Inc.'s ("Charter") Motion in Limine. (Doc. 69). Charter requests an order excluding evidence regarding Plaintiff Charles Daniel Smith's ("Smith") medical leave and his evidence of weather conditions from December 2017. (Doc. 70 at 1). The Court will address each argument in turn.

I.     **Factual Background**

In 2012, Smith was employed by Cablevision Systems Corporation as the regional vice president of network management. (Doc. 44 at ¶ 1). Charter acquired Cablevision in July 2013, and as a result Smith became Charter's employee. (*Id.* at ¶ 2).

1

In May 2016, Smith changed positions to vice president of ISP (Inside Plant), responsible for the Mountain States management area, which included Montana, Wyoming, and portions of Colorado. (*Id.* at ¶ 12; Doc. 12 at ¶ 4). Smith was employed at Charter's location in Billings, Montana. (Doc. 6 at ¶ 3). In July 2017, Smith took time off for a church mission trip to Honduras to help disabled and disadvantaged children and mothers. (Doc. 44-4 at 45-46). The trip was intended to be for two weeks, but Smith was injured and required 10 days of hospitalization in Honduras. (*Id*). After a life flight to Miami, Smith spent another 14 days in the hospital. (*Id.* at 45). Smith's time away from work was classified as leave under the Family and Medical Leave Act ("FMLA"). (*Id.* at 46–47).

Smith returned to work on November 20, 2017, but was terminated on January 29, 2018. (*Id.* at ¶¶ 30, 49). A corrective action report ("CAR") (hereinafter "Termination Letter") identified two reasons for termination: (1) "knowingly allowing Duane Auge to continue performing as a management Area Critical Infrastructure Engineer after his position was changed to an ISP II Engineer"; and (2) "[i]n December 2017, you failed to fulfill the 50% travel requirement to your management area." (Doc. 41-25 at 1).

## II. Procedural Background

Smith filed a claim for wrongful discharge under the Wrongful Discharge from Employment Act ("WDEA") in the Montana Thirteenth Judicial District Court

2

in Yellowstone County in March 2018. (Doc. 1). Charter removed the action to federal court in April 2018. (*Id*). Following discovery Charter moved for summary judgment. (Doc. 39).

Judge Cavan issued a recommendation finding genuine issues of material fact as to whether Charter allowed unauthorized electrical work as to Duane Auge, and whether a 50% travel requirement existed in December 2017. (Doc. 48). This Court reviewed Judge Cavan's findings and determined that the dispute over the 50% travel requirement was "immaterial" because Charter presented enough evidence to establish "good cause" for the termination. (Doc. 51 at 10). Specifically, the undisputed evidence established that Smith failed to comply with the quarterly traveling requirement that both parties agreed existed. (*Id.*). This Court granted summary judgment based on Smith's failure to adhere to the quarterly traveling requirement. (*Id.* at 11).

Smith appealed this order to the Ninth Circuit. *Smith v. Charter Comms. Inc.*, 22 F.4th 1134. (9th Cir. 2022). The Ninth Circuit opined that if the sole question was whether Charter had "good cause" then this Court properly granted summary judgment. *Id.* at 1138. But, if the *Galbreath* rule remains good law, then genuine issues of material fact remained, and summary judgment was not proper. *Id.* In *Galbreath v. Golden Sunlight Mines, Inc.,* the Montana Supreme Court held that an

3

employer may only defend its termination decision for the reasons stated in a discharge letter. 270 Mont. 19, 21, 890 P.2d 382, 384–85 (1995).

The Ninth Circuit then turned to the "key legal question in this case," whether the *Galbreath* rule remained good law following the Montana Legislature's 1999 statutory amendments. *Smith*, 22 F.4th at 1139. In 1999, the Montana legislature amended Mont. Code Ann. § 39-2-801 to provide that "a response to the demand may be modified at any time and may not limit a person's ability to present a full defense in any action brought by the discharged employee." *Id.* at 1140. According to the Ninth Circuit, this amendment meant that the employer is no longer bound in litigation by the reasons given in a termination letter. *Id.* Montana Courts have split following the 1999 amendments on whether the *Galbreath* rule still applied. *Id.* at 1140–41. To resolve this split, the Ninth Circuit certified the following question to the Montana Supreme Court: "Whether, in an action for wrongful discharge pursuant to Montana Code Annotated section 39-2-904, an employer may defend a termination solely for the reasons given in a discharge letter, as the court held in *Galbreath v. Golden Sunlight Mines, Inc.*, 270 Mont. 19, 890 P.2d 382 (1995), or whether the 1999 statutory amendments have superseded the *Galbreath* rule." *Id.* at 1141.

The Montana Supreme Court found that because the *Galbreath* rule is an evidentiary rule predicated on the Montana Rules of Evidence, it was not superseded

4

by the 1999 amendments. *Smith v. Charter Comms. Inc.*, 2023 MT 92, ¶ 24, 412 Mont. 292, 529 P.3d 871. Therefore, employers are precluded from admitting irrelevant evidence of collateral reasons for discharge for reasons outside the termination letter. *Id.* However, employers may offer evidence to substantiate the reasons already given in a termination letter. *Id.* Ultimately, the Montana Supreme Court found that Charter can defeat a wrongful discharge action only for the reasons given in a discharge letter, and genuine issues of material fact existed as to the reasons given in Smith's Termination Letter. Summary judgment was reversed, and the matter was remanded to the district court for further proceedings. (Doc. 60 at 5).

Charter now moves to exclude various evidence Smith plans on introducing at trial.

### III. Legal Standard

Evidence must be relevant to be admissible. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Deciding whether "'a fact is of consequence in determining the action' requires considering the substantive issues the case presents." *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019). Generally, the threshold for relevance is low. *Id.* Relevant evidence may be excluded if its probative value is substantially outweighed by, among other things,

misleading the jury or confusing the issues. Fed. R. Evid. 403. The Rule 403 balancing inquiry is made on a case-by-case determination, requiring an examination of the surrounding facts, circumstances, and issues. *United States v. Lloyd*, 807 F.3d 1128, 1152 (9th Cir. 2015).

IV. Discussion

    A.    *Smith's Reasons for Medical Leave*

Charter contends that Smith's medical leave in 2017 may be relevant to understanding Smith's employment timeline, but the reason underlying Smith's medical leave is irrelevant. (Doc. 70 at 5). Smith has never claimed discrimination in connection with his leave, so the fact that his medical leave was related to a religious mission trip does not make any fact of consequence in this matter more or less likely to be true. (*Id.*). In response, Smith argues that his medical leave and the underlying cause are relevant because they "complete the narrative regarding why [he] could not complete site visits in December 2017." (Doc. 75 at 4).

Evidence must be relevant to be admissible, and evidence is relevant if it has any tendency to make a fact of consequence more or less likely to be true. Fed. R. Evid. 401–402. In a WDEA action, courts are prohibited from admitting or considering evidence that is collateral or irrelevant to the reason for the employees' termination provided in a termination letter. *Smith*, ¶ 24 (citing *Galbreath*, 270 Mont. 19, 890 P.2d 382).

6

In Smith's Termination Letter, Charter listed two reasons for termination: (1) Violation of Playbook Standards and ISP Business Rules by allowing Duane Auge to continue working as an electrician; and (2) Failing to fulfill the 50% travel requirement in December 2017. Therefore, the court may only admit evidence relevant to these two issues.

Here, Smith's medical leave may explain why he could not fulfill the travel requirement in December 2017. However, it is not relevant that Smith was on medical leave because of his church's mission trip. Smith may present evidence related to the fact that he was on medical leave until November 2017 but cannot present evidence that he sustained his injuries while on a religious mission trip. Therefore, Charter's motion in limine to exclude the underlying reason for Smith's medical leave is GRANTED.

### B. *Smith's Photographs from December 2017*

Next, Charter moves to exclude photographs taken by Smith in December 2017. (Doc. 70 at 8). Smith produced six photographs in discovery as evidence of the record-setting snowfall and unsafe driving conditions in December 2017. (*Id.*). Charter argues that the photos are irrelevant because they lack contextualizing information, such as metadata or time stamps, and the photographs do not depict the road conditions. (*Id.*). In response, Smith argues that the photographs are relevant because they depict Montana weather conditions in December 2017. (Doc. 75 at 8).

7

Smith contends that if Charter can argue that he failed to meet the alleged 50% travel requirement, he should be permitted to rebut the argument on the basis that the weather conditions made the requirement unreasonable. (*Id.*)

The first photograph (Doc. 70-2 at 2) features a row of trees in front of a house, with a yard in the foreground. The second photograph (*Id.* at 3) features a house with a yard in the foreground. The third (*Id.* at 4), fifth (*Id.* at 6), and sixth (*Id.* at 7) photographs feature open fields blanketed by snow. Last, the fourth photo (*Id.* at 4), shows a car dealership parking lot with snow on the ground.

Evidence must be relevant to be admissible, and evidence is relevant if it has any tendency to make a fact of consequence more or less likely to be true. Fed. R. Evid. 401–402. Here, the photographs would be relevant if they depicted the road conditions in December 2017. Such photos could substantiate Smith's claim that the 50% travel requirement that month was unreasonable. However, none of the six photographs submitted by Smith show the road conditions on the day the photos were taken.

The issue in this case is not whether there was snow on the ground in December 2017 but whether the snow made the roads too dangerous to travel on. The photographs here do not make the fact that road conditions were dangerous more likely since they do not depict the road conditions. Therefore, Charter's motion in limine to exclude the photographs taken by Smith in December 2017 is GRANTED.

C.  *Online Publications*

According to Charter, in discovery, Smith produced approximately fifty pages of online articles regarding snowfall in Montana. (Doc. 75 at 11). The articles come from various publications such as The Billings Gazette, The Great Falls Tribune, The Missoulian, The Independent Record, and the National Oceanic and Atmospheric Administration ("NOAA"). (Doc. 70-3). Charter now moves to exclude the articles as inadmissible hearsay and irrelevant. (*Id.* at 11–13). In his response, Smith agreed to exclude any articles not written in December 2017. (Doc. 75 at 10). Three articles remain including two local news articles and a National Climate Report ("Climate Report") from the National Centers for Environmental Information ("NCEI"). (Doc. 78 at 5).

Charter argues that the remaining online articles are hearsay because they cannot come from a declarant testifying at trial, and therefore they would be out of court statements. (Doc. 70 at 14). Further, that the online articles are being offered to prove the truth of the matter asserted: that weather conditions in December 2017 made driving dangerous. (*Id.*). In response, Smith argues that the articles are not hearsay. (Doc. 75 at 13). Smith claims that he intends to use the online articles to show that he read these articles and determined that it was unsafe for him to travel. (*Id.*). In addition, Smith argues that the Climate Report satisfies the public records hearsay exception under Rule 803(8). (*Id.* at 14).

9

Under Fed. R. Evid. 801, hearsay "is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is inadmissible in a court of law unless it comes under one of the exceptions set forth in Fed. R. Evid. 803. *Haddad v. Lockheed California Corp.*, 720 F.2d 1454 (9th Cir. 1976). This Court will first address whether the articles are hearsay, and then if necessary whether they are relevant.

### 1. *Newspaper Articles*

Newspaper articles are by their very nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted. *Larez v. City of Los Angeles,* 946 F.2d 630, 642 (9th Cir. 1991); *AFMS LLC v. United Parcel Service Co.*, 105 F. Supp. 3d 1061, 1070 (C.D. Cal. Apr. 30, 2015). Out-of-court declarations introduced to show the effect on the listener are not hearsay. *Los Angeles News Service v. CBS Broadcasting, Inc.*, 305 F.3d 924, 935 (9th Cir. 2002); *United States v. Payne*, 944 F. 2d 1458, 1472 (9th Cir. 1991).

Smith argues that he offers the articles to show he read them and then determined it was not safe to travel, rather than for the truth of the matter asserted. (Doc. 75 at 13). Charter responded that this argument "strains credulity." (Doc. 78 at 5). One of the articles is from December 30th – "a Saturday, at which time Mr. Smith was not expected to travel in any event." (*Id.* at 6). While "the other article

… discusses snow conditions on one day in December [and] fails to explain why Mr. Smith could not travel the entire month." (*Id.*).

This Court agrees with Charter that Smith's argument "strains credulity" as it relates to the December 30th article. (Doc. 70-3 at 10). The article was published on a Saturday in the final weekend of December. Smith does not present any evidence to indicate that he was expected to work weekends. Therefore, the Court does not find it plausible that Smith read the article and then determined it was unsafe to drive earlier in the month of December. Charter's motion in limine to exclude the December 30, 2017, article is GRANTED.

The remaining article was published by the Associated Press on December 19, 2017. (*Id.* at 9). The article focuses on "a winter storm warning for much of the northern half of the state, including Helena, Great Falls, Kalispell, and Havre." (Doc. 70-3 at 9). The Court finds that it is plausible Smith read this article and determined that it was too dangerous to drive and perform site visits.

However, it is unclear whether the article is relevant under Rule 401. Here, the fact of consequence is that the roads were too dangerous for Smith to meet the 50% travel requirement in December 2017. Smith was based out of Charter's location in Billings and was responsible for visiting 50 sites throughout Montana, Wyoming, and Colorado. For this article to be relevant, Smith must show that he was expected to visit the locations discussed in the article that day. Without such

11

evidence, the article would be irrelevant because it does not discuss difficult road conditions for Billings to the cities referenced in the article in northern Montana. Therefore, the Court will reserve ruling for trial, and allow Smith to present evidence regarding his planned site visits on December 19, 2017, and then determine if the evidence is admissible.

### 2. *December 2017 National Climate Report*

Smith argues that the Climate Report satisfies the public records hearsay exception because "official publications posted on government agency websites should be admitted into evidence easily based on Federal Rules of Evidence 803(8) and 902(5)." (Doc. 75 at 14 (quoting *Lorriane v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 551, (D. Md. 2007))). Charter argues that the proper way to present evidence about the weather is via certified data from the National Centers for Environmental Information ("NCEI"). (Doc. 70 at 12; Doc. 78 at 7).

Records of government agencies are public records for the purposes of Rule 803(8). *United States v. Orozco*, 590 F.2d 789, 793 (9th Cir. 1979); *United States v. Ballesteros-Selinger*, 454 F.3d 973, 975 (9th Cir. 2006). Under 803(8), the pertinent question is whether the creation and maintenance of the document at issues is "appropriate to the function of the" relevant government office, given "the nature of the responsibilities assigned to that office." *United States v. Fryberg*, 854 F.3d 1126, 1131 (9th Cir. 2017). Various district courts in the Ninth Circuit have considered

whether publications from government websites fit under the public records hearsay exception. Taking guidance from a Maryland district court decision in the Fourth Circuit, these courts found that "given the frequency with which official publications from government agencies are relevant to litigation, and the increasing tendency for such agencies to have their own website, Rule 902(5) provides a very useful method of authenticating these publications. When combined with the public records exception to the hearsay rule, Rule 803(8), official publications posted on government agency websites should be admitted into evidence easily." *Lorraine*, 241 F.R.D. at 551 (quoted by *Greer v. County of San Diego*, 726 F. Supp. 3d 1058, 1073 (S.D. Cal. Mar. 1, 2023); *Shorter v. Baca*, 101 F. Supp. 3d 876, 905–906 (C.D. Cal. 2015), *vacated on other grounds*, 895 F.3d 1176 (9th Cir. 2018); *Johnson v. Cate*, 2015 WL 5321784 at *10 (E. D. Cal. Sept. 10, 2015)).

Here, the publication at issue comes from the NCEI website. The NCEI is a governmental agency that archives the climate and weather data that NOAA gathers. A monthly climate report is "appropriate to the function" of NCEI given the nature of the office. Further, the report itself comes from the NCEI's official government website. This Court agrees with the other Ninth Circuit district courts that official publications posted on government websites should be admitted under Rule 803(8). Therefore, the Climate Report is admissible under the public records hearsay exception.

Charter next argues that the Climate Report is irrelevant. (Doc. 78 at 9). Charter contends that the Climate Report is irrelevant because it merely summarizes weather nationwide with brief mentions of Montana, rather than discussing specific weather conditions from day to day and in the location within Montana that Smith was expected to travel. (*Id.*). In response, Smith argues that the Climate Report "go[es] to the heart of the case" because Smith was fired for his lack of travel, and the Climate Report is evidence of unsafe road conditions. (Doc. 75 at 11).

The portions of the Climate Report that summarize weather conditions outside of Montana are irrelevant as they have no bearing on the facts of consequence. However, the Climate Report section highlighting the weather conditions in Billings is relevant. According to the Climate Report, "Billings, Montana observed 1.81 inches (46.0 mm) of precipitation (362% of normal), making it the 5th wettest December since records began in 1934. Billings also recorded 25.3 inches (642.6 mm) of snow (309% of normal), the 3rd snowiest December on record." (Doc. 70-3 at 50–51). Smith was based out of Billings while working for Charter, and the fact that Billings experienced its third snowiest December on record makes it more likely that the roads in and out of Billings were dangerous to travel. Therefore, the portion of the Climate Report that discusses the weather in Billings during December 2017 is admissible. Charter's motion to exclude the Climate Report is GRANTED in-part and DENIED in-part.

V. **Conclusion**

Accordingly, IT IS ORDERED that Defendant Charter's Motion in Limine (Doc. 69) is GRANTED IN PART and DENIED IN PART.

1. The Motion in Limine is GRANTED as to the underlying reason for Smith's medical leave.

2. The Motion in Limine is GRANTED as to Smith's photographs taken in December 2017.

3. The Motion in Limine is GRANTED as to the article published on December 30, 2017.

4. The Court will reserve ruling on Charter's Motion in Limine as to the article published on December 19, 2017.

5. The Motion in Limine is GRANTED in-part and DENIED in-part as to the Climate Report from NCEI.

DATED this 13th day of January, 2025.

SUSAN P. WATTERS
United States District Judge