IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CHARLES DANIEL SMITH, | CV 18-69-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| CHARTER COMMUNICATIONS, INC., | |
| Defendant. | |

Before the Court is Charter Communication's ("Charter") Rule 37 motion to exclude the testimony and evidence of Beth Smith and Mr. Smith's Supplemental Damages Expert Witness Disclosure ("Supplemental Expert Report"). (Doc. 110). Charter moves to exclude the evidence as being untimely disclosed under Rule 26. (*Id.* at 5). In response, Charles Daniel Smith ("Mr. Smith") moves to exclude the testimony and evidence of Sean Gallagher ("Mr. Gallagher") based on Charter's untimely disclosure. (Doc. 111 at 2).

For the following reasons, the Court grants Charter's motion and denies Mr. Smith's motion.

**I.     Background**

The initial discovery cut-off date in this matter was May 17, 2019.  (Doc. 68 at 5).  The deadline was extended until October 10, 2019, at which time discovery

1

closed. (*Id.*). Following appellate proceedings, this case was remanded and a new discovery deadline of July 1, 2024, was set. (*Id.*). The deadline for disclosure of Mr. Smith's expert report was April 8, 2024. (*See* Doc. 65). The deadline for Charter's rebuttal expert report was May 20, 2024. (*Id.*). On April 8, 2024, Mr. Smith made his expert disclosures with Dr. Adair's report attached. (*See* Doc. 110-4). Charter produced its rebuttal expert report on May 20, 2024, with J. Duross O'Bryan's ("Mr. O'Bryan") report attached. (*See* Doc. 110-3). On January 6, 2025, Mr. Smith provided Charter with a Supplemental Expert Report from Dr. Adair. (*See* Doc. 83-4).

The deadline for the Final Pretrial Order was January 8, 2025. (Doc. 110 at 7). To prepare for the Final Pretrial Conference, the parties exchanged witness lists in December 2024. (*Id.*). During this exchange Mr. Smith disclosed Beth Smith, his wife, as a witness for the first time. (*See* Doc. 110-5).

## II.    Legal Standard

### A.    *Rule 26*

Rule 26(a)(1)(A) provides that a party must, without awaiting a discovery request, provide to other parties the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims. Fed. R. Civ. P. 26(a)(1)(A). Rule 26(e)(1) requires all parties to supplement or correct responses to discovery requests "in a

timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

   B.    *Rule 37*

   "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A party that does not timely identify a witness under Rule 26 may not use the witness to supply evidence at trial. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105 (9th Cir. 2001). Rule 37(c)(1) is "self-executing" and "automatic." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2015). Once non-compliance is shown, the burden is on the party who failed to comply to demonstrate that the failure was either substantially justified or harmless. *Apple, Inc. v. Samsung Electronics Co.*, 2012 WL 3155574, at *4 (N.D. Cal. Aug. 2, 2012).

## III.    Analysis

   A. *Late Disclosed Witnesses*

   Rule 26 places the disclosure obligation on a "party." *Ollier*, 768 F.3d at 862. That a witness has been mentioned during discovery does not relieve the parties'

affirmative obligation to identify the witnesses they expect to rely on. *Id.* The fact that the opposing party may know the identity of a possible witness is no substitute for compliance with Rule 26. *Gustafson v. Am. Fam. Mut. Ins. Co.*, 2012 WL 5904048 at *3 (D. Colo. Nov. 26, 2012). An adverse party should not have to guess which undisclosed witnesses may be called to testify. *Ollier*, 768 F.3d at 862. The mere mention of a name is not enough to fulfill a party's disclosure obligations; the party offering the witness "must demonstrate how the discovery process disclosed that the witness was likely going to be called at trial." *Classical Silk, Inc. v. Dolan Group, Inc.*, 69 at *8 (C.D. Cal. Mar. 21, 2016).

Rule 26(e) requires parties to supplement their disclosures in a "timely manner," but that phrase is not defined in the rule and depends on the facts and circumstances of the case. *Markson v. CRST Int'l, Inc.*, 2021 WL 5969519 at *1 (C.D. Cal. Nov. 23, 2021). Supplemental disclosures served after the close of discovery are presumptively untimely. *Wong v. Regents Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005). Witness disclosures must be made sufficiently before the close of discovery for the party-opponent to have a reasonable opportunity to pursue discovery of these witnesses. *Id.*

Under Rule 37(c)(1), "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial,

4

unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 26] was either justified or harmless." *Yeti by Molly, Ltd*, 259 F.3d at 1107. "The factors a court may consider in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010).

###### *1.    Beth Smith*

On December 22, 2018, Mr. Smith named Beth Smith in an answer to Charter's interrogatories. (*See* Doc. 111-2). Interrogatory Number 2 asked Mr. Smith to identify any persons he had communicated with concerning the allegations in the present lawsuit. (*Id.*). Mr. Smith listed Beth Smith as someone he "discussed his termination, the reasons for his termination, and his lawsuit against [the] defendant." (*Id.*). On December 20, 2024, Mr. Smith's counsel provided Charter with a draft of their Will Call Witness List and disclosed Beth Smith as a witness for the first time. (Doc. 110 at 7; *see* Docs. 110-4, 110-5, 110-1, 68-2). In a conferral on January 6, 2025, Mr. Smith's counsel represented that Beth Smith would testify

to Mr. Smith's ability to travel after returning to work at Charter following his suspension on November 20, 2017. (Doc. 110 at 8).

Charter moves to exclude any testimony or evidence from Beth Smith because she was untimely disclosed on December 20, 2024, and the late disclosure is neither justified nor harmless. (*Id.* at 5, 17). In response, Mr. Smith argues Beth Smith was disclosed before December 20, 2024, because Mr. Smith mentioned her approximately 60-70 times in his depositions on September 5, 2019, and May 29, 2024, and she was "listed in [Mr.] Smith's discovery." (Doc. 111 at 13). Further, if this Court finds the disclosure untimely, the disclosure was harmless because Charter knew Beth Smith was married to Mr. Smith at the time of his termination. (*Id.* at 14).

As stated in this Court's previous order, mentioning a name is not enough to fulfill a party's disclosure obligations; the party offering the witness "must demonstrate how the discovery process disclosed that the witness was likely going to be called at trial." *Classical Silk*, 2016 WL 7638112 at *8; (*see* Doc. 82 at 6). Mr. Smith does not convincingly explain how Charter was supposed to determine that he would call Beth Smith to testify at trial. It is unsurprising that a plaintiff would discuss his firing and subsequent lawsuit with their spouse. Charter's knowledge that Mr. Smith "has discussed his termination, the reasons provided for his termination, and his lawsuit against the defendant" with Beth Smith does not

provide notice that Mr. Smith would call her as a witness. Further, Mr. Smith's deposition answers referring to Beth Smith relate to their business ventures, not Mr. Smith's ability to travel in November 2017. (*See* Doc. 119-2). Therefore, Beth Smith was not disclosed as a witness until December 20, 2024. Supplemental disclosures served after the close of discovery are presumptively untimely. *Wong*, 410 F.3d at 1062. Discovery closed on July 1, 2024; therefore, Mr. Smith's disclosure of Beth Smith is untimely.

Beth Smith must be excluded as a witness unless the disclosure was justified or harmless under the *Lanard Toys* factors. Here, the factors weigh in favor of Charter. Charter faces substantial prejudice because they had no reason to conduct discovery of Beth Smith until she was disclosed as a witness on December 20, 2024. Since discovery is closed, Charter cannot cure this prejudice by deposing Beth Smith. If the Court allowed Beth Smith as a witness and permitted Charter to depose her, the Scheduling Order would have to be modified to reopen discovery. Discovery has been closed for six months, and the trial is currently set for February 3, 2025. Reopening discovery at this time would require moving the trial date. Mr. Smith also cannot attribute his failure to disclose Beth Smith to circumstances outside his control. Mr. Smith knew Beth Smith's identity well before the discovery deadline and failed to supplement his disclosures. Because the *Lanard Toys* factors favor Charter, Beth Smith must be excluded as a witness at trial.

### 2. *Mr. Gallagher*

In Mr. Smith's initial disclosures on June 13, 2018, he listed Mr. Gallagher as an individual likely to have discoverable information relevant to his claims. (*See* Doc. 110-1). According to the disclosure, Gallagher had information about "Smith's employment and termination, [and] Charter's policies and procedures." (*Id.*). On July 2, 2024, Mr. Smith provided his supplemental disclosures, which again included Mr. Gallagher as an individual likely to have discoverable information. (*See* Doc. 110-9). Mr. Smith did not include Mr. Gallagher in his final witness list. (*See* Doc. 110-5).

Charter's supplemental disclosure on July 1, 2024, included "any witnesses identified by Plaintiff to which Defendant does not object" under the individuals likely to have discoverable information section. (*See* Doc. 111-7). Charter did not include this language in their initial disclosures on October 26, 2018. (*See* Doc. 110-2). On January 8, 2025, Charter disclosed their May Call Witness List and listed Mr. Gallagher. (*See* Doc. 93)

Mr. Smith argues that if this Court excludes the testimony of Beth Smith, the Court must also exclude Mr. Gallagher's testimony. (Doc. 111 at 14). Mr. Smith contends that Mr. Gallagher was untimely disclosed as a potential witness because Charter did not identify Gallagher as a person with knowledge or a potential witness during the discovery phase. (*Id.* at 6). In response, Charter argues that Mr. Smith

disclosed Mr. Gallagher on June 13, 2018, when he listed him as someone likely to have discoverable information in his initial disclosures. (*Id.* at 5; *see* Doc. 110-1). Further, in its supplemental disclosures, on July 1, 2024, Charter included "[a]ny witnesses identified by [Mr. Smith] to which [Charter] does not object." (Doc. 119 at 6) (citing *Niemeyer v. Ford Motor Co.*, 2012 WL 845668, at *3 (D. Nev. Mar. 12, 2012) ("Plaintiffs could not have been unfairly surprised ... due to [party's] continued representation that it was incorporating all witnesses identified by all the other parties in their own ... initial disclosures....")

Charter cites *Niemeyer* as support for their disclosure being timely. However, this case is distinguishable from *Niemeyer*. In *Niemeyer*, the Court found that "because the plaintiffs were aware from the *outset of the litigation* that [Defendant] intended to call the same witnesses as [Plaintiff], [Defendant's] actions were harmless." *Niemeyer*, 2012 WL 845668 at *2 (emphasis added). In Charter's initial disclosure, they did not reserve the right to call witnesses identified by Mr. Smith. (*See* Doc. 110-2). This language was added to Charter's supplemental disclosure on July 1, 2024, the final day of discovery. (*See* Doc. 111-7). Mr. Smith was unaware at the outset of litigation that Charter intended to call witnesses identified in his disclosures, and he remained unaware until Charter's supplemental disclosures on July 1, 2024. Therefore, Charter did not disclose Gallagher as a witness until the final day of discovery. This Court has previously determined that witnesses

disclosed on the last day of discovery are untimely. (*See* Doc. 82 at 10). Given the previous determination, the Court finds that Gallagher's disclosure was untimely.

Mr. Gallagher must be excluded as a witness unless the disclosure was justified or harmless under the *Lanard Toys* factors. Here, the factors weigh in favor of Charter. Mr. Smith first disclosed Mr. Gallagher as a potential witness on June 13, 2018, and then again in his supplemental disclosure on July 2, 2024. (*See* Docs. 110-1, 68-2). Mr. Smith knew for over six years that Mr. Gallagher had discoverable information about his claims. There should be little surprise concerning the evidence Mr. Gallagher will offer. Since Mr. Smith knows the evidence Mr. Gallagher will offer at trial, there is no prejudice to be cured. This conclusion is further supported by Charter's Trial Brief indicating that Mr. Gallagher will testify about Charter's travel requirement and termination policies, the same categories of information Mr. Smith listed in his June 13, 2018, initial disclosure, and July 2, 2024, supplemental disclosure. (*See* Doc. 91 at 15, 24; Doc. 110-1, Doc. 68-2). Since additional depositions of Mr. Gallagher are unnecessary, discovery does not have to be reopened, and the February 3, 2025, trial date will not be disrupted. This Court finds that the late disclosure of Mr. Gallagher is harmless, and therefore Charter may call him as a witness at trial.

## B. *Dr. Adair's Expert Report*

Under Rule 26(a), litigants must disclose all expert opinions and related materials that may be used at trial and make such disclosures at the times directed by the court. *Martinez v. Costco Wholesale Corporation*, 336 F.R.D. 183, 186 (S.D. Cal. July 22, 2020). Further, Rule 26(e) obligates parties to supplement an initial expert report served pursuant to Rule 26(a) "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the party. *Id.*; Fed. R. Civ. P. 26(e). "The duty to supplement is not an opportunity to add to information which should have been disclosed initially under Rule 26(a). *Erickson v. Ford Motor Co.*, 2007 WL 5527512 at *6 (D. Mont. Nov. 14. 2007). "[S]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. U.S.*, 181 F.R.D. 639, 640 (D. Mont. 1998). Rule 26(e) creates a duty to supplement "in a timely manner." *Butler v. United Life Insurance Co.*, 2019 WL 4479838 at *2 (D. Mont. Sept. 18, 2019).

The deadline for Mr. Smith's expert disclosure was April 8, 2024. (*See* Doc. 65). On April 8, 2024, Mr. Smith disclosed his Damages Expert Disclosure with Dr. Adair's report attached. (*Id.* at 9). On May 20, 2024, Charter disclosed their Rebuttal Expert Report from Mr. O'Bryan. (Doc. 110-3). In her June 26, 2024,

deposition, Dr. Adair testified that she was considering revising her stock share estimate to reflect the average value of Mr. Smith's stock options on the vesting date rather than based on the stocks' value on the expert report's date. (Doc. 110-7 at 4–5). When asked how long it would take her to supplement the expert report with these updated values, Dr. Adair stated she "wouldn't think that … would take more than two hours." (Doc. 110-7 at 8).

On January 6, 2025, Mr. Smith disclosed a Supplemental Expert Report from Dr. Adair. (Doc. 110 at 12). According to Dr. Adair, she made two changes that affected the valuation of Mr. Smith's damages. (Doc. 111-1). First, she adjusted past values into 2025 dollars. (*Id.* at 2). Second, she adjusted the stock option value to reflect the price when vesting occurred rather than the date of her expert report. (*Id.*). As a result, the estimate of stock option losses rose from $586,274 to $971,456. (*See* Docs. 83-2, 83-4).

Charter now moves to exclude the Supplemental Expert Disclosure as being untimely disclosed under Rule 26. (Doc. 110 at 28). Charter first argues that the disclosure was untimely because Dr. Adair planned on supplementing her disclosure as early as June 26, 2024, but did not provide the supplement until January 7, 2025. (Doc. 110 at 22). Further, the supplement must be excluded because Mr. Smith's failure to disclose or reference Dr. Adair's new methodology until four weeks before the trial prejudices its ability to cross-examine Dr. Adair. (Doc. 110 at 28). In

response, Mr. Smith argues that the Supplemental Expert Disclosure was timely because it did not contain a new methodology, only an adjustment of the stock values to reflect the stock price valued at the time vesting occurred. (Doc. 111 at 8). Further, Mr. Smith was not required to disclose the supplemental report until pretrial disclosures were due on January 8, 2025. (*Id.* at 9). Last, even if the disclosure was untimely, it should not be excluded under Rule 37 because Dr. Adair's report does not contain new opinions that require a response from Charter's expert. (*Id.* at 10–11).

Here, the Court finds the Supplemental Expert Report contains additions that were not properly supplemented under Rule 26(e). The Supplemental Expert Report contains new information that was accessible and known to Dr. Adair well before the new disclosure. The adjusted value of the stock options is based on the average value of the stock on the vesting dates in 2019, 2020, and 2021. (*See* Docs 83-1, 83-4). This information was readily available to Dr. Adair at her June 26, 2024, deposition. Further, despite Dr. Adair stating the supplement would take only two hours, the Supplemental Expert Report was not disclosed until January 6, 2025, two days before the Final Pretrial Order and six months after the close of discovery.

In addition, Dr. Adair's Supplemental Expert Report contained a new methodology. "A party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand-new report." *Medtronic*

*Vascular, Inc. v. Abbott Cardiovascular Systems, Inc.*, 2008 WL 4601038 at *1 (N.D. Cal. Oct. 15, 2008). "[S]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. U.S.*, 181 F.R.D. 639, 640 (D. Mont. 1998).

In Dr. Adair's original report, she calculated Mr. Smith's lost value in stock options by taking the average value of the stock on the date of the expert report. In her Supplemental Expert Report, she calculated the loss by taking the value of the stock on its vesting date in 2019, 2020, and 2021. As a result, the estimate of stock option losses rose from $586,274 to $971,456. (*See* Docs. 83-2, 83-4). This change does not correct an inaccuracy or "fill the interstices of the report" based on information unavailable to Dr. Adair at the time of filing. The change is better characterized as a new methodology for calculating Mr. Smith's damages. Mr. Smith's failure to disclose the Supplemental Expert Report before January 6, 2025, and the new methodology used in the report makes it an improper supplementation under Rule 26.

"Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (citing *Yeti by Molly, Ltd.*, 259 F.3d at 1106. Before striking an expert report under Rule 37, courts may

consider four factors: (1) the public's interest in expeditious resolution of litigation, (2) the need to manage the court's docket, (3) the risk of prejudice to the other parties, (4) public policy favoring disposition on the merits, and (5) the availability of less drastic sanctions. *See Butler*, 2019 WL 4479838 at \*3 (citing *Plentyhawk*, 2016 WL 3086404 at \*4).

Charter argues that these factors weigh in favor of exclusion. (Doc. 110 at 27). It argues that the late disclosure prejudices Charter because it cannot evaluate the new analysis and prepare a proper rebuttal in time for trial. (*Id.*). Further, it expended significant resources in developing its rebuttal expert report that addressed the methodology used in the April 8, 2024, report. (*Id.*). In response, Mr. Smith argues that Charter would not be prejudiced because Charter's expert, Mr. O'Bryan, also relied "on the most current stock price for valuation purposes." (Doc. 111 at 11).

In Mr. O'Bryan's Rebuttal Expert Disclosure, he wrote,

"[Dr. Adair] values the stock options and RSUs as of January 29, 2024, at $380.83 per share. This valuation date is essentially the most current date as of the date of Ms. Adair's report which is dated January 31, 2024. *I have also determined that the most current data available as of my report date is the most applicable valuation date of Mr. Smith's lost stock options and RSUs.*"

(Doc. 110-3 at 18 (emphasis added)). At the time of Mr. O'Bryan's report on May 20, 2024, he agreed with Dr. Adair's methodology for calculating the value of Mr.

Smith's stock options. However, Dr. Adair has changed her methodology, which would require a response from Mr. O'Bryan.

Here, the Court finds that the factors weigh in favor of exclusion. Given the late disclosure (less than a month before trial), Charter would face substantial prejudice if they had to address the new methodology used by Dr. Adair. If the Court were to allow the untimely supplementation, the Court would have to modify the Scheduling Order to reopen discovery after it has been closed for more than six months and move the current trial date of February 3, 2025. The Court declines to do so and finds that excluding the Supplemental Expert Report will not unduly prejudice Mr. Smith because he can continue to rely on his initial expert report.

This Court notes that Dr. Adair's adjustment of past values into 2025 dollars to calculate Mr. Smith's losses is not an untimely disclosure. This change is a correction of an inaccurate calculation that could not have been adjusted until 2025. Therefore, Mr. Smith will be permitted to rely on the expert report from April 8, 2024, adjusted to reflect the valuation in 2025 dollars.

## IV.    Conclusion

IT IS HEREBY ORDERED Charter's motion to exclude the testimony and evidence of Beth Smith, and the Supplemental Expert Report is GRANTED. Mr.

Smith will still be permitted to rely on Dr. Adair's April 8, 2024, expert report adjusted for the proper valuation in 2025 dollars.

Further, Smith's motion to exclude the testimony and evidence of Mr. Gallagher is DENIED.

DATED this 28ᵗʰ day of January, 2025.

SUSAN P. WATTERS
United States District Judge